Good morning, may it please the court. Sylvia Baez on behalf of Mr. Becerra. In this case, Mr. Becerra argued two principal issues. The government really did not have any substantive evidence of his guilt because he was a passenger when he was arrested. So they requested permission to admit evidence of a prior arrest that Mr. Becerra was involved in. And the court, it's our position that the court erred by allowing the government to present this evidence in several ways. Mr. Becerra, on the second occasion when he was arrested, was a passenger. The only evidence that... Just shows he learns from his mistakes, eh? I wouldn't concede that, Your Honor. No, I would not expect you to concede that. Anyway, the government presented, when he was arrested the second time, he came into the United States... Why isn't this exactly the kind of evidence a juror is entitled to consider? Well, first of all... I mean, this is not just some guy going across the border and lo and behold they find a woman hidden in the compartment. He's a guy who six months earlier got caught for the same crime. Well, first of all, when he got caught for that same crime, there wasn't any evidence that he knew that that person was in there. He never admitted that he knew that the person was there. He stated that he was given a truck by a friend of his. And it's true, they arrested him. And that he needed the money and he was working off a debt. Yes, that's true. Do we know how much money he was paid the first time around? I don't think so. But I think it's a reasonable inference, the first time around, where he's the only person in the vehicle. The driver's seat is elevated because of the concealed compartment underneath the driver's seat. He says, I was paid in order to work off a debt, but I had no idea that there was somebody in here. I think a jury is reasonable in inferring that perhaps he did know what he was doing. Right, but of course he was in a trial for that first offense. Of course. And there was no evidence that he actually knew or that he... No, there was some evidence. I just kind of gave you a sketch of it. Right. And then the second time, the only evidence that there was... Really, the only evidence that the government was able to present was that there was a hit on his driver's license. And that's all. There were no statements by the co-defendant. There was no identification by the material witness of him or the co-defendant. There was no statements by Mr. Cacera that he knew anything was going on. And so the whole case, the whole government's case in chief, was just that he was previously involved in this other offense. Yeah, I think you make a good point. I think without this previous offense, the government really didn't have much of a case. But the government did have at least this without the prior episode. We get witness testimony from the woman who's being smuggled in sort of the compartment on the side of the van, that she gets into the compartment, the compartment is closed up, the van starts up virtually immediately, and it doesn't stop until they are stopped at the border, from which I think it's reasonably inferable that both the driver and the passenger get in at the same time, from which it's reasonably inferable that your client knew what was going on. But my client was a passenger. I understand that. And even if the government, even though the government presented all this evidence, it's my position that there was still not enough evidence to find that he was guilty of this offense. The defense being aiding and abetting. That's to say not just knowing, but actively participating in some form. Right, because there's cases, and I cited those in the brief, regarding knowing that somebody's in there and actively participating in the aiding and abetting part of the offense. What about his statement to the officer that he wasn't bringing anybody across? He made a statement that he didn't know anything about the person. Is there any relevance to that? What inference can be drawn from that statement? I think he said he wasn't bringing anything or something like that. Well, I think that was at the primary inspection. Right. The officer said he asked them. Officer Beltran's testimony was that he asked the defendant whether he was bringing anything, and he said no, he wasn't bringing anything. Right. Is there any inference to be drawn from that? I don't believe so. I think that if the jury could draw an inference that he knew that the person was there, it still doesn't make him guilty because you have to prove that he encouraged aiding and abetting. And he did something, an act, to make sure that the offense was completed. Do we know anything about the relative ages of your client and his nephew? Nephew suggests younger, but I don't know the ages. No, and actually the government argued in its opening that they were related, but there was no testimony and there was no other evidence that was presented that they were related. I see. I will reserve a couple of minutes for rebuttal if you don't have any other questions at this time. Okay, thank you. May it please the Court. Lawrence Kasper, Counsel for the Appellate of the United States. Your Honors, first I want to come directly to the central issue that Judge Tunheim recognized, which is that Becerra here took an active role in this endeavor when he lied to the Customs and Border Protection officer. When asked if they were bringing anything in from Mexico, he says no. That, Your Honor, is evidence debating it. When they say they, maybe it's the ambiguity of the English language and the word you. Maybe he meant you personally. Maybe my nephew is, but I'm just sitting here. Well, Your Honor, I believe that in this case the evidence is very strong, and as Your Honor pointed out, the smuggled alien herself testified that she was loaded into a vehicle, not at some neutral third site, but at a load house where the uncle and the nephew were meeting. The testimony of the appellate was very clear that immediately, and that's her word, not mine, the doors closed, they left for the port of entry, they made no stops along the way. So from that, it's certainly reasonable for the jury to reach the inference. For what? I'm sorry, Your Honor? Reach what inference? Well, reach the inference that the defendant here had knowledge of the smuggled alien in the vehicle. Let's say he did have knowledge. Well, let's assume, assuming that he had knowledge, he also took an active role in the endeavor by line. He knew when the question was asked that there was a smuggled alien in the vehicle. He's asked, is there anything or are you bringing anything in? I said, no, I'm not. Well, and he and his nephew were bringing in a smuggled alien. He didn't say he's not. He said, I'm not. I don't see, I mean, where is that a lie? Was this conversation conducted in English or Spanish? First of all, the defendant here is a United States citizen. The conversation was conducted in English and the... Believe me, I know lots of United States citizens that don't speak much English. My mother went to her death after 30 years in this country, speaking little English. Sorry, I'm not casting a special on you, but I'm just telling you that I asked the question because I assume from the name that the conversation might have been in Spanish, because of the last name, but it was in English, especially. That is the record. So how, this points out the ambiguous English language being what it is, being what they are, the pronoun you, why can't somebody perfectly honestly answer the question, I'm not bringing anything in, when you're sitting in a car, you're a passenger, you know that the guy next to you is bringing something in, but I'm saying, I'm not. Sounds like he's a trained lawyer. A truthful answer that's profoundly misleading. Your Honor, though, in this case, we have the 404B evidence. We have the prior event, which... No, no, I understand there might be other evidence. I'm just focusing. You started off by saying, well, you know, this answer was further proof of, and it's proof because he lied, so I'm trying to deconstruct what it means, or how he lied. Wherein is the lie? Well, Your Honor, when you come to the port of entry and you are asked these types of questions, whether it is a false statement in the technical term of 1001, or whether it is a misrepresentation or something, this or any individual... Well, let's say, I have a colleague, I have a colleague, I won't say who it is, who's fond of Cuban cigars. And let's say he and I, or she and I, not to be too... coming in from Canada, and I know that he picked up 20 Cuban cigars in Vancouver, just to pick a place in Canada. And we're traveling together, this conference, although we're not married or anything, so we have separate reservations. But, you know, we're traveling together, and we both go through customs. And as we're standing there, I say, are you bringing in any Cuban cigars? Or are you bringing in anything that you want to declare? And I say, no. Now, I know perfectly well that my colleague is carrying 20 Cuban cigars in his or her suitcase. Am I lying when I say that? Am I obligated to say, but look at him, you know, you better check his suitcase. I'm presuming, in this hypothetical, that you were not previously arrested with smuggled Cuban cigars. Let's say I was. Let's say I was. Let's say, in fact, I tried the same thing six months earlier and got caught, and so I'm very careful this time not to bring in any Cuban cigars, because it told me, you know, that next time you get caught, you're going to get into some trouble. And I don't want to get into trouble. But, you know, what am I supposed to say? Look at, you know, you better check his bag because... Well, certainly a reasonable inference here could be drawn, Your Honor, that the nephew here is aiding and abetting his nephew in this, or is, in fact, the principal who has directed... No, I'm not disputing that. We're just focusing on what we can get, if anything, of value out of the statement that he told the officer, no, I'm not bringing in anything. Now, if you want to give up on that statement, that's fine. We can talk about the rest of the evidence. But I'm just zeroing in on that one statement, which you made the centerpiece. You know, you started off by saying, ta-da, here it is. And I didn't get it, so maybe you want to have one more shot at telling me why it matters? Your Honor, because it helps to show that this individual, that Becerra, took an active role in this event. In addition to that evidence, though, there is... Well, it is true if he did, then he's lying. If he did take an active role, then he's lying. And then the lying proves that he took an active role. But if, in fact, he didn't take an active role, then he's not lying, and then it can't help you prove. It's just like a, you know, this is sort of your classic bootstrapping argument. Well, Your Honor, I don't believe it is, because, again, the material witness, her testimony here was extremely strong. We have her being picked up at a load house by these two individuals and loaded into the vehicle. As soon as those screws are on, immediately the doors close, the vehicle proceeds to the port of entry. So he knows there's an alien, you know, there's contraband. I mean, let's say he doesn't even know it's a human being. Let's say he thinks it's... he doesn't even quite know what's in there, but he knows it's contraband. But he's just hitching a ride. He's just getting a, you know, and he has nothing to do with it. Does that make him guilty? Well, Your Honor, we also have the 404B evidence here, which this court has repeatedly held is admissible for purposes of intent. And in this case, the events were virtually identical. We have the same venture, we have the same medium of vehicle, we have a non-factory compartment used in both, the same port of entry, the same number of smuggled aliens. This court has repeatedly held that that sort of evidence is directly relevant to intent. Doesn't the evidence in the case have to connect him to the smuggled alien or the contraband in some way? Isn't that a rule of the circuit as well? There has to be a connection? Well, the connection here would be the point of entry into the vehicle. I'm not sure that this court has specifically said that. But didn't the smuggled alien testify that she'd never seen the defendant before? She did, and that would be a natural occurrence at a load house. You wouldn't want to provide a witness who actually saw him loaded. But the circumstances here are such that it was reasonable for the jury to infer that that individual was loaded, went directly to the port of entry without stopping. There can be no other reasonable conclusion drawn under those circumstances. A lot of inferences in this case. Well, Your Honor, there are inferences, but the 404B evidence here is... Explain to me, why have another superfluous person there in the front seat? What functional purpose does the government theorize, or what was shown at trial? How would... Certainly, Your Honor, there are several conceivable purposes. One is pure window dressing with a cover story of nephew and uncle. And here, if they're truly relatives, then it would seem more likely than not that this is a shared venture. If they're not, then why hold themselves out to be? You know, I can't remember, and you can refresh my memory. Who had a California driver's license? Who had a green card? What were the modes of identification with the nephew and the uncle? I believe the uncle had the California driver's license that returned the lookout. And the nephew had a green card? I believe he had a border crossing card. Border crossing card, yeah. Your Honor, I also want to point out that there was evidence of the relationship between the uncle and nephew. That evidence came in through the defense's investigator, who so testified. And I'm happy to try to provide the page, but the witness was Rudy Zamora, who testified at page 11 of the volume 2 of the transcript of the relationship between Rodriguez-Preseno and Becerra-Correal. In fact, Your Honors, the court's test for sufficiency of the evidence is, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. And here, yes, Your Honor. Is it true that the single affirmative act supporting the conclusion that the defendant assisted in the smuggling is his lie to the officer that he wasn't bringing anything in? Your Honor, that is the primary. The fact is the fact that he was in the vehicle, and another conclusion that can be reasonably drawn here as to why he was in the vehicle, is that he was the senior member of this adventure, if you will. He may have been providing directions. He may have been providing instructions. He may have known, in fact, where to deliver that. But isn't just being in the vehicle, doesn't that get into the mere presence issue, that you need more than mere presence? I believe if the court looks at the mere presence cases, those cases arise in the context of the drug smuggling cases and really goes to the element of possession. In an alien smuggling case, there is no element of possession. We distinguish that in a footnote. You know, we've got two alien smuggling cases in which mere presence is exactly on point. By a judge, I know quite well. And, Your Honor, I would say that Your Honor, Judge Sondheim is correct, that that is the piece of evidence which distinguishes this case from those. And, Your Honor, I see I'm out of time, and I apologize for going over. Okay, thank you. Thank you, Your Honor. We'll hear from, you've got about four minutes left. Okay. I just wanted to briefly respond. You know, with regard to the material witness's testimony that she got in the van, and the van never stopped, I mean, I don't know if you've ever been to Tijuana, but it would probably be like winning a lottery if you got to the first place, and that's the only place the car stopped before you got to the border because there's always a ton of people in line at the car, no matter what time of day it is. And you stop like a million times before you get to the port of entry. You're just talking about traffic lights, traffic jams, et cetera, that's what you're talking about? Yes, I mean, it's chaos over there in Tijuana. You know, I know she testified that they only stopped when the officer said, was asking about that, and that was the first voice she heard. But I think, you know, there's a lot of inferences that may be drawn, and the government has been drawing a lot of inferences in this case, as well as, you know, the lady was in a compartment, and who knows what her perceptions were like from inside there. And in terms of all of the government's cases, they cited several cases stating that— I'm not sure what all of that means. So the theory would be that she was wrong about that, the van stopped somewhere along the way and picked up your client? Is that what the— Well, I mean, I think the government emphasized that argument, and I think the court emphasized that as well, but we really don't know what happened. Except for her testimony that there was only one stop, and that was when they got to the border. My client was, and I'm not denying that he was a passenger in the car, of course. But your argument could be either that she is lying, that is to say, of course they stopped, because there are lots of traffic lights, or that she didn't quite mean it that way, and maybe they stopped at traffic lights, but your argument, I think, is driving at it as possible that he got in at some later time when they stopped. I think my argument is that it doesn't really matter, because he was a passenger there when he got to the border. It doesn't matter when he was in. It's just whether or not they can prove that he actively encouraged and aided and abetted this particular offense, which the co-defendant pled guilty to. And the government cites several cases where 404B was allowed, including Ramirez, U.S. v. Wynn, at its response brief at page 19. And all of those cases, except for one case, were drivers when they were arrested. They were the drivers with undocumented people in the cars. All of them. As to the driver, the inference is that the driver is in possession of the car, even if he's not the owner, and one can draw the inference that he's in possession of the vehicle. You must have known what was in it. Right, but it also goes to the prejudice of the whole 404B evidence, because in those cases where people were presented evidence of 404B, in those previous cases that were cited, the defendant was actually the driver in that particular offense. And they brought in 404B evidence of other offenses. And in this case, my client was a passenger. He wasn't the driver. He didn't have control over anything else. I don't think there's any evidence or sufficient evidence to show that he encouraged or aided and abetted. If the jury thought that the defendant's statement to Officer Beltran was a lie, if that was their conclusion, why can't that be considered an affirmative act in assisting with alien smuggling, which would support a conviction? I would still say that that would not be enough. Based on the cases that this circuit has cited in Altarimac-Mirano v. Gonzalez and the other case that I cited in my brief. It's not enough to pull it beyond the mere presence doctrine? Right. I don't think so. Thank you very much. If you don't have any other questions. Thank you. Case is now in the stand for minutes.
judges: Tunheim, Kozinski, Fletcher W.